FERGUSON, Judge.
The novel question presented here is whether an earlier perfected security interest in a modular home becomes subordinate to a security in realty by virtue of the home becoming affixed to the realty. We disagree with the trial court’s holding that the act of annexing the personalty to the realty made it a fixture as a matter of law and reverse for findings of fact.
Structural Homes, a builder of prefabricated homes, borrowed $50,000 from appellant, Community Bank of Homestead, to build a modular home and executed an agreement giving the bank a security interest in the home. It was agreed between Community Bank and Structural Homes that the modular home was personal property and was to remain personal property even if attached to realty. The security agreement reflecting the parties’ intent also provided that the home could not be removed from Dade County without Community Bank’s consent, and that no other liens or security interest could attach to the collateral.
Community Bank perfected its security interest by filing a UCC-1 form with the Secretary of State in Tallahassee. The agreement and the UCC filing setting forth a description of the modular home did not contain a legal description of, or reference to, any real estate because the home was being manufactured for the purposes of display and sale at a Dade County home show. When the modular home did not sell at the show, it was moved to Structural Homes’ headquarters in Florida City where it was displayed for sale.
A year and a half later the home remained unsold. Attempting to market the home, Structural Homes obtained a $116,-000 loan from Barnett Bank to purchase a lot in Monroe County, to prepare the lot to accept the modular home, and to transport the home to Monroe County. Barnett’s mortgage and security agreement contained an after-acquired property and fixture provision pursuant to which it recorded the mortgage and filed a UCC fixture financing statement in Monroe County. Structural Homes moved the modular home to Monroe County, plugged the modules into concrete blocks, and hooked up the gas and light utilities.
Subsequently, Structural Homes defaulted on both loans. Barnett instituted a foreclosure action naming Community Bank as a defendant. Community Bank counterclaimed asserting that its interest in the home was superior to Barnett’s interest. At trial the court declared the modular *930 home a fixture and ruled that the priority of the liens was therefore governed by section 679.313(2)(a), Florida Statutes (1985), which provides:
A security interest which attaches to goods which are or become fixtures is invalid against any person with an interest in the real estate at the time the security interest in the goods is perfected or at the time the goods are affixed to the real estate, whichever occurs later. ...
Barnett Bank’s security interest was adjudged superior to Community Bank’s security interest.
A threshold question was whether a modular home that is bolted to a concrete foundation and connected to utilities is personalty or a fixture. The court disposed of the question summarily concluding, as a matter of law, that the home became part of the realty. We hold that the question whether property annexed to realty is a fixture is a question of fact, or a mixed question of law and fact, to be determined by the evidence presented and the particular facts and circumstances of each case. Commercial Fin. Co. v. Brooksville Hotel Co., 98 Fla. 410, 123 So. 814 (1929); Goldberger v. Regency Highland Condo. Ass’n, Inc., 452 So.2d 585 (Fla. 4th DCA 1984); Solomon v. Gentry, 388 So.2d 52 (Fla. 4th DCA 1980); Rompon Properties, Inc. v. Langelier, 341 So.2d 1068 (Fla. 2d DCA 1977).
Three factors are important to a determination of whether chattel annexed to realty has become a fixture: (1) the degree of annexation, (2) the adaptation of the chattel to the use of the land, and (3) the intention of the party making the annexation. Commercial Fin. Co., 123 So. at 816; Rompon, 341 So.2d at 1069. In modern cases the intent of the parties is the main factor — sometimes the only factor— to be considered. See Commercial Fin. Co., 123 So. at 816. See generally 1 G. Thompson, Real Property § 56 (repl. ed. 1980). Here, the security agreement is evidence of Structural Homes’ intent that the modular home remain personalty even after attachment to land.
The evidence was conflicting, however, regarding Barnett Bank’s knowledge of Community Bank’s agreement with Structural Homes. Although Barnett denied knowledge of the agreement, the president of Structural Homes testified that he informed Barnett Bank of Community Bank’s security interest in the modular home.
In Burbridge v. Therrell, 110 Fla. 6, 148 So. 204, 205 (1933), the Supreme Court of Florida wrote:
It is held by the great weight of authority in this country that a subsequent purchaser or mortgagee of land without notice of an agreement with the owner that an annexation thereto shall not become a fixture is not bound by such agreement, being entitled to the thing annexed as apparently forming a part of the land_ But it is also held that a purchaser or subsequent mortgagee of land with knowledge of an agreement that an article attached to the realty shall remain personal property takes subject to such agreement and cannot claim the article annexed. Workman v. Henrie, 71 Utah, 400, 266 P. 1033, 58 A.L.R. 1346.
In entering a judgment for Barnett Bank the court focused, obviously, on the “after-acquired-property” provision of Barnett’s mortgage contract and strictly applied the statute. No consideration was given to Community Bank’s argument on equitable principles. We, however, perceive no legislative intent to abrogate existing equitable principles, as applied to the subject by case law, with the enactment of section 679.313(2)(a). See J. White & R. Summers, Uniform Commercial Code § 5 (1980); R. Anderson, Uniform Commercial Code § 1-103:1 (1981) (“The Code could have usurped the whole field of law as to commercial transactions, but it does not purport to do so.... When the prior case law is consistent with the code it remains controlling as authority.”) Section 671.103, Florida Statutes (1985), provides that “[ujnless displaced by the particular provisions of this code, the principles of law and equity ... shall supplement its *931 provisions.” Indeed the code is quite consistent with the case law.
Before applying the statute the court was obligated to decide, as a factual matter, whether Barnett was without actual or constructive knowledge of Community Bank’s agreement with Structural Homes that the collateral would retain its character as personalty even if attached to real property. That question is unresolved.
The cause is reversed and remanded to the trial court for proceedings consistent with this opinion.