HENDRY, Judge.
Claimant Sweeting appeals from a circuit court order entered in apportionment proceedings which awarded appellee Ham-mons $9,759 as compensation for “immovable fixtures” installed by Hammons for the purpose of operating a bar in Sweet-ing’s building. The property was taken in eminent domain proceedings by Dade County on October 1, 1984.
When Dade County filed its petition in condemnation in June 1984, one of the properties designated was parcel UM-04-05 owned by appellant but under a lease agreement with Hammons, d/b/a Mo’s Bar. The agreement provided by Sweeting was a printed form lease containing a standard clause which stated in part:
The lessee shall not ... make any alterations therein, and all additions thereto, without the written consent of the lessor, and all additions, fixtures or improvements which may be made by lessee, except movable office furniture, shall become the property of the lessor and remain upon the premises as a part thereof, and be surrendered with the premises at the termination of this lease.
In the summer of 1984, “June or July,” Hammons was informed by Dade County’s Housing and Urban Development Agency (Little Hud) that, as a result of the taking, he would receive $10,000 for relocation expenses and an additional amount of approximately $9,700 for his business fixtures. It was Hammons’ understanding that he would receive the awards as soon as his landlord settled with the county for the realty.
Although Hammons paid rent through August 1984 he closed the doors to his bar at the end of July 1984, having been told by a Little Hud representative that the county *228 would take care of his remaining lease time. The check for relocation was received by Hammons in November 1984, but his right to compensation for the bar’s trade fixtures remaining in the building was challenged by Sweeting’s motion for apportionment. Following a hearing on the motion, the circuit court awarded Ham-mons the entire $9,759 appraised value for his immovable fixtures. Sweeting contends on appeal that the circuit court erred in awarding compensation to Hammons for property allegedly transferred automatically to Sweeting by the terms of their lease at the moment of taking. Until this appeal, Hammons was unrepresented by counsel.
The determination of whether title to fixtures installed by a tenant has been retained by the lessee or has transferred to the lessor requires an examination of all relevant facts and circumstances, particularly in an eminent domain proceeding. Art. 10, § 6(a), Fla. Const. Factors to be considered when qualifying fixtures as either realty or personalty were established by the Florida Supreme Court in Commercial Finance Co. v. Brooksville Hotel Co., 98 Fla. 410, 123 So. 814, 816 (1929):
First, actual annexation to the realty or something appurtenant thereto; second, appropriateness to the use or purpose of that part of the realty with which it is connected; and, third, the intention of the party making the annexation that it shall be a permanent accession to the freehold. What that intention was in making the annexation is inferred from the following facts: (a) the nature of the article annexed; (b) the relation of the party making the annexation; (c) the structure and mode of annexation; and (d) the purpose or use for which the annexation has been made.
This court has recently held that “the question whether property annexed to realty is a fixture is a question of fact, or a mixed question of law and fact, to be determined by the evidence presented and the particular facts and circumstances of each case.” Community Bank of Homestead v. Barnett Bank of the Keys, 518 So.2d 928 (Fla. 3d DCA 1987) (citations omitted).
In the present case, Hammons made numerous alterations and improvements to the leasehold while converting it from a shoeshine parlor into a bar. He also installed a number of fixtures necessary to the operation of such a business.
During the condemnation proceedings, a county appraiser listed, as “immovable fixtures,” items for which $9,759 in compensation was deposited by the county in the court’s registry for distribution. The appraiser’s report listed two bars, an ice maker, coolers, water heater and air conditioner, cabinets and shelving. It was explained they had been listed as “immovables” because their economic relocation costs were high in relation to their value at the present location. Nevertheless, these business fixtures were not permanently affixed to the premises but could, with little injury to the realty, be removed. Their purpose, unique to the operation of a bar, would be of little or no value to the building owner for they were integral components of the business run by the lessee.
Whether or not a chattel when attached to real estate becomes a fixture and thus part of the realty is a complex problem. While the question has been seldom addressed in Florida, a trade fixture exception to the general fixture rule at common law has been established. In 1941, the Florida Supreme Court recognized that trade fixtures placed upon land by a tenant for purposes of his trade were to be regarded as personalty rather than realty and might be removed by the tenant at the end of his term, provided that removal did not substantially injure the freehold. Meena v. Drousiotis, 146 Fla. 168, 200 So. 362 (1941). Based upon principles of public policy, the trade fixture rule was designed to encourage trade and manufacturing, Wetjen v. Williamson, 196 So.2d 461 (Fla. 1st DCA 1967), having its foundation in the interest which society has that every person shall be encouraged to make the most beneficial use of his property under the circumstances. Cameron v. Oakland County Gas & Oil Co., 277 Mich. 442, 269 N.W. 227 (1936).
*229 Where the relationship of landlord-tenant exists, the presumption is in favor of the right of a tenant to remove structures or articles he has placed on the leased property for his own purpose, even in the absence of an express stipulation. Wetjen, 196 So.2d at 464. Nothing short of the clearest expression of an agreement by the parties to that effect can justify the extension of the grasp of the landlord so as to cover chattels, or personal property brought upon the premises by the tenant, in pursuance of the business for which the premises were leased. Lindsay Bros. v. Curtis Pub. Co., 236 Pa. 229, 84 A. 783 (1912). For in the absence of an express contract as to trade fixtures, there is an implied contract permitting the tenant to remove them at the proper time and in a proper manner. McClintock & Irvine Co. v. Aetna Explosives Co., 260 Pa. 191, 103 A. 622 (1918). It has also been held that trade fixtures are removable regardless of the provisions of an express agreement between the parties. Ray v. Young, 160 Iowa 613, 142 N.W. 393 (1913). Thus, in disputes between the landlord and the tenant there is a presumption that the tenant, by annexing the fixtures, did so for his own benefit and not to enrich the freehold, and the law accordingly construes the tenant’s right to remove his annexations liberally, at least where removal may be effected without material injury to the freehold. Empire Building Corp. v. Orput & Assoc’s, 32 Ill.App.3d 839, 336 N.E.2d 82 (App. 2d Dist.1975).
Other jurisdictions have been faced with the problems that arise from condemnation of properties containing trade fixtures or functional units worth much while in place but worth little when taken apart for relocation. As stated in Beaverton Urban Renewal Agency v. Koning, 53 Or.App. 842, 632 P.2d 1359 (1981): “the property rights of the lessee have been taken just as those of the lessor have been, and those rights ... have a value for which the lessee is entitled to compensation.” These jurisdictions also recognize that the con-demnee must be compensated for equipment involved in the taking. Division of Admin., State of Florida v. Allen, 447 So.2d 1383 (Fla. 5th DCA 1984).
In a controversy involving a federal condemnation of property leased for use as a restaurant and taproom, “trade fixtures” were held not to be included within the word “fixture” and did not pass to the landlord at termination of the lease. United States v. Certain Parcels of Land in Philadelphia, 250 F.Supp. 255 (E.D.Pa.1966). Bars, partitions, doors, mirrors, and beer pump and pipes were held not to be included in the phrase “improvements made upon the premises” but were a part of the trade fixtures in Ames v. Trenton Brewing Co., 56 N.J.Eq. 309, 38 A. 858 (Ct.Ch.1897). See Matz v. Miami Club Restaurant, 127 S.W.2d 738 (Mo.App.1939). Although a lease covenant required redelivery of the premises with “all improvements,” the Alabama Supreme Court held that an amusement park tenant’s machines were not included in the term. The mere fact that the trade fixtures must be taken apart or even wrecked to remove them from the premises did not impair the tenant’s right of removal. Walker v. Tillis, 188 Ala. 313, 66 So. 54 (1914). A similar clause providing that “all additions and improvements which may be made by either party shall be the property of the landlord” gave the landlord no additional rights to articles found to be trade fixtures but was simply declaratory of the law. Century Holding Co. v. Pathe Exchange, Inc., 201 A.D. 893, 193 N.Y.S. 928 (N.Y.App.Div.1922).
The primary trade fixtures case cited by appellant, City of New York v. G & C Amusements, Inc., 55 N.Y.2d 353, 449 N.Y.S.2d 671, 434 N.E.2d 1038 (1982), is clearly distinguishable from the present cause. G & C operated an amusement park on land leased from the City of New York. When customer parking became a substantial problem, a contiguous parcel was also leased from the city.
The lease specified that the land be used solely for “no charge” parking and that it be left in the same condition at the end of the lease as when the tenant took possession. In anticipation of condemnation of *230 the properties for The College Point Industrial Park, the term of the lease was 30 days, with automatic renewals until one of the parties gave notice. It contained a delivery clause similar to the quoted provision from the Sweeting lease, but with the additional proviso that subleasing of any or all of the parcel was forbidden. A condemnation clause provided that the landlord could recover possession pursuant to a condemnation proceeding. Despite the agreement, G & C expanded its amusement park over the new leasehold, permanently affixing a number of rides to the land and subletting several sections.
The question raised on appeal to the court was limited to whether or not claimants who annexed the trade fixtures to leased land were entitled to compensation when the city exercised its power of eminent domain over the existing property interests. While acknowledging the general rule of trade fixtures, but basing its decision on the distinguishing facts of the case, the court reinstated the final decree of the trial court which awarded the claimants no compensation for the trade fixtures installed on the leasehold. The court reasoned:
Claimants having freely agreed to the restrictions of the lease cannot now be heard to complain because their violation of the lease did not inure to their profit. “It is the duty of the State, in the conduct of the inquest by which the compensation is ascertained, to see that it is just, not merely to the individual whose property is taken, but to the public which is to pay for it.” (Searl v. School Dist., Lake County, 133 U.S. 553, 562, 10 S.Ct. 374, 377, 33 L.Ed. 740 [1890]).
449 N.Y.S.2d at 676, 434 N.E.2d at 1044.
Because of the strong presumption that a tenant has the right to remove his trade fixtures at the termination of his lease, the landlord has a heavy burden to show that title to the trade fixtures vested in him as a result of the contract. United States v. Certain Parcels of Land in Philadelphia, 250 F.Supp. at 260.
There is no evidence in this case that the tenant’s trade fixtures were to pass to the landlord at the end of the lease. The lease is a familiar form lease without any typewritten clauses referring to the fixtures. It does not seem to contain any reference to the trade fixtures at all. No evidence was adduced at the hearing tending to prove that any bargaining had been done by the parties relating to trade fixtures. Thus, we conclude that trade fixtures are not included within the word “fixtures” within the lease and they did not pass to the landlord at the termination of the lease by the taking.
Accordingly, the order under review is affirmed.
Affirmed.
BASKIN, J., concurs.