743 So.2d 1165 (1999)
SEMINOLE COUNTY, Appellant/Cross-Appellee,
v.
SANFORD COURT INVESTORS, LTD., et al., Appellees/Cross-Appellants.
No. 98-1700.
District Court of Appeal of Florida, Fifth District.
October 22, 1999.
*1166 Robert A. McMillan, County Attorney, and Henry M. Brown, Assistant County Attorney, Sanford, for Appellant/Cross-Appellee.
Mark R. Leavitt and Kurt Garber of Wilson, Leavitt & Small, P.A., and Kimberly A. Ashby of Akerman, Senterfitt & Eidson, P.A., Orlando, for Appellees/ Cross-Appellants.

ON MOTION FOR CLARIFICATION
ANTOON, C.J.
After granting appellees' motion to supplement the record on appeal[1] and reviewing the supplemental materials submitted, we withdraw our opinion dated April 30, 1999 and substitute the following opinion in its place.
Seminole County appeals the final judgment entered by the trial court in this eminent domain proceeding challenging the award of business damages to tenants of the property owner. Upon review, we hold that the trial court erroneously permitted the tenants to present expert testimony as to business damages incurred beyond the termination of their leases and the loss of value of personal property. Accordingly, we reverse the final judgment as it pertains to business damages and remand this matter for further proceedings related thereto.
Cumberland Farms (Cumberland) owned a 101,387 square foot parcel of real property located at the corner of Airport Boulevard and Sanford Avenue. Cumberland operated a convenience store and gas station on this property and leased adjoining *1167 commercial space to two tenants. Cumberland's tenants were The Hancock Company (Hancock) and Mohammed Deis d/b/a Napoli's Pizza Italian Restaurant (Mr. Deis). Hancock operated a plumbing business and Mr. Deis operated an Italian restaurant. Hancock's original lease expired in December 1994, but allowed for a two-year extension ending in December 1996. Mr. Deis' lease expired June 1995, but he continued to lease the space on a monthly basis.
In February 1994, Seminole County filed a petition in eminent domain seeking to condemn private property for the purpose of widening Sanford Avenue and constructing improved drainage facilities. On April 19, 1994, the trial court entered an order of taking condemning 8,158 square feet of Cumberland's property in fee simple and a small area for a temporary construction easement. The property taken was a strip of land adjacent to Airport Boulevard and Sanford Avenue. As a result of the taking, Cumberland lost twelve parking spaces in front of and beside the convenience store, an air pump station, landscaping, light poles, and signs. Neither the building nor the parking spaces in front of the rental spaces were directly affected by the taking. Both Hancock's lease and Mr. Deis' lease contained the following language relating to eminent domain:
Eminent Domain, Condemnation: If the property or any part thereof wherein the demised premises are located shall be taken by public or quasi-public authority under any power of eminent domain or condemnation, this lease, at the option of the Landlord, shall forthwith terminate and the Tenant shall have no claim or interest in or to any award of damages for such taking.
On May 11, 1994, the County made its good faith deposit of its estimate of the value of the taking pursuant to section 74.051(2), Florida Statutes (1993).
Cumberland, Hancock, and Mr. Deis were all represented by the same attorney with respect to the eminent domain proceeding. In their answer to the County's eminent domain petition, all three defendants claimed, among other things, that they were entitled to recover business damages pursuant to section 73.071(3)(b), Florida Statutes (1993).
In May 1996, while the eminent domain proceeding was still pending, Cumberland informed Hancock and Mr. Deis that their leases would not be renewed. Cumberland instructed Mr. Deis to vacate the premises by June 1996 and Hancock to vacate by July 1996. After both tenants had vacated the premises Cumberland demolished the building and constructed a larger convenience store with more gas pumps on the property. The new facility did not include any rental space.
In August 1997, the County served Cumberland, Hancock, and Mr. Deis with offers of judgments. Before trial, Cumberland and the County agreed that the value for the land and improvements taken was $70,800, the value of the temporary construction easements was $8,800, and the amount of Cumberland's business damages was $100,001. However, Hancock and Mr. Deis were unable to reach a settlement with the County, and their claims for business damages proceeded to trial. After deliberations, the jury entered a verdict awarding Mr. Deis $85,000 and Hancock $60,000 in business damages. The trial court entered a final judgment in accordance with the jury's verdict. This appeal followed.
The County filed a pretrial motion in limine seeking to limit the evidence of the tenants' business damages to "the term and option periods of the Leases of the Tenants ... and excluding business damage and business valuation evidence beyond the term and option periods of the respective Leases." The trial court summarily denied the motion. At trial, Hancock and Mr. Deis presented expert testimony that they had suffered business damages of $82,627 and $104,745, respectively. *1168 The expert testified that he calculated the business damages based on the "past history of the [lease] renewals to try to make a determination how long those business[es] would be staying at that site." In reaching his conclusion, the expert relied on a letter sent by Cumberland to Mr. Deis stating: "[h]ad it not been for the eminent domain we fully expected that you could have continued to be a valued tenant for the indefinite future." The expert testified that he calculated the business damages caused by the County's condemnation by assuming that Hancock and Mr. Deis would have continued as tenants "for an indefinite future as reflected in the letter from Cumberland Farms." The County moved to strike this testimony, but the motion was summarily denied.
The County's first claim on appeal is that the trial court erred in allowing Hancock and Mr. Deis to submit expert testimony that they sustained business damages after the date their existing leases were terminated by Cumberland. More specifically, the County argues that tenants are entitled to recover only those business damages which are sustained during their right of possession and therefore tenants cannot recover business damages for any period of time after the landlord terminates their right of possession. We agree.[2]
Section 73.071(3)(b), Florida Statutes (1993), authorizes a trial court to award business damages in an eminent domain proceeding:
73.071 Jury trial; compensation; severance damages.-
(3) The jury shall determine solely the amount of compensation to be paid, which compensation shall include:
* * *
(b) Where less than the entire property is sought to be appropriated, any damages to the remainder caused by the taking, including, when the action is by the Department of Transportation, county, municipality, board, district or other public body for the condemnation of a right-of-way, and the effect of the taking of the property involved may damage or destroy an established business of more than 5 years' standing, owned by the party whose lands are being so taken, located upon adjoining lands owned or held by such party, the probable damages to such business which the denial of the use of the property so taken may reasonably cause; any person claiming the right to recover such special damages shall set forth in his or her written defenses the nature and extent of such damages.
The purpose of awarding business damages in an eminent domain proceeding is to mitigate the hardship suffered by a business when the taking of only a portion of property reduces the value associated with the location of the business. See Tampa-Hillsborough County Expressway Auth. v. K.E. Morris Alignment Service, Inc., 444 So.2d 926, 929 (Fla.1983). Generally, the business damages contemplated by this statute are "in the nature of lost profits attributable to the reduced profit-making capacity of the business caused by a taking of a portion of the realty or improvements thereon." LeSuer v. State Road Dep't, 231 So.2d 265, 268 (Fla. 1st *1169 DCA 1970). Accord Department of Transportation, State of Florida v. Rogers, 705 So.2d 584, 587 (Fla. 5th DCA 1997). However, if the taking results in the entire destruction of a business, the business owner may also recover other damages including those for the loss on the value of business equipment and the value of customer goodwill. See Matthews v. Division of Administration, etc., 324 So.2d 664, 667 (Fla. 4th DCA 1975).
While the recovery of business damages is ordinarily sought by the property owner, a tenant is also entitled to seek recovery of business damages. A tenant's business damages constitute the amount totaling the tenant's leasehold interest in the property. See Sallas v. State Road Dep't, 220 So.2d 378, 380 (Fla. 1st DCA 1969). For example, in Sallas, the state road department condemned a 10-foot-wide strip of property on which Sallas operated a gas station. Id. at 379. Sallas had subleased the property from an oil company who had leased the property from the owners. Id. Sallas' sublease was for one year, renewable annually for additional one-year terms, and either party could terminate the lease at the end of any renewal period. Id. The jury awarded Sallas nothing for business damages resulting from the condemnation proceeding. Id. On appeal, the first district reversed, holding that Sallas was entitled to recover business damages for the one-year renewal period, explaining:
The term of the sublease under which appellant operates his business being on a year-to-year basis subject to termination by either party at the end of any renewal period necessarily restricts the extent of future business damages to which appellant might be entitled to a period not exceeding one year.
Id. at 379-80. We adopt this reasoning and hold that under section 73.071(3)(b), a tenant is entitled to recover business damages resulting from a condemnation proceeding, but such damages are limited by the duration of the leasehold interest existing in favor of the tenant at the time of the entry of the order of taking.
Hancock and Mr. Deis cite to Almota Farmers Elevator & Warehouse Co. v. U.S., 409 U.S. 470, 93 S.Ct. 791, 35 L.Ed.2d 1 (1973), for the proposition that in an eminent domain case the jury is entitled to consider business damages sustained by a tenant beyond the length of the lease if the landlord intended to renew the lease. However, the rule announced in Almota does not support this proposition. The Almota court addressed the valuation of a permanent structure constructed by a lessee on the condemned property, not the valuation of a tenant's business damages. Id. at 473, 93 S.Ct. 791. The court in Almota carefully distinguished this rule from the holding in United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946). In Petty Motor, the court held that the valuation of a tenant's damages caused by a partial taking is limited to the remainder of the lease term. Id. In Almota, the court noted that "[u]nlike Petty Motor, there is no question here of creating a legally cognizable value where none existed, or of compensating a mere incorporeal expectation." 409 U.S. at 473, 93 S.Ct. 791. Moreover, unlike Almota and Petty Motor, "[t]he right to business damages under section 73.071(3)(b), Florida Statutes (1995), in a condemnation proceeding is a matter of legislative grace, not a constitutional imperative... [and] must be strictly construed in favor of the state." Trinity Temple Church v. Orange County, 681 So.2d 765, 766 (Fla. 5th DCA 1996), rev. denied, 689 So.2d 1073 (Fla.1997).
It is undisputed that Hancock and Mr. Deis operated their businesses on the property for more than five years prior to the condemnation and that they are entitled to assert a claim for business damages. See § 73.071(3)(b), Fla. Stat. (1993). However, their claim is limited to those damages incurred during the period Hancock and Mr. Deis had the right to possession of the property under the terms of *1170 their leases. They are not entitled to recover for business damages incurred as a result of Cumberland's decision to terminate their leases. Thus, it was error for the trial court to allow Hancock and Mr. Deis to seek business damages based upon the theory that they would have been allowed to remain in possession of the property indefinitely. The trial court's failure to limit the evidence on this issue improperly permitted the jury to award the tenants damages in excess of the value of their leasehold interest injured by the County's taking. See Sallas, 220 So.2d at 380. Accordingly, we must reverse the business damage award and remand this matter for a new trial.
The County also argues that the award of business damages must be reversed because the trial court issued an improper instruction to the jury regarding trade fixtures. The tenants' expert testified that the tenants sold their personal business property, including fixtures, at auction for an amount below its actual value because they were forced to vacate the leased premises once the eminent domain proceeding commenced. Hancock presented evidence that it lost $58,000 and Mr. Deis presented evidence that he lost $53,000 when the business property was sold. Over the County's objection, the trial court instructed the jury that, if they found that the tenants sustained any damages to trade fixtures, "you must determine whether the loss should be included in business or severance damages and award the losses in one, but not both of these categories of the verdict." Consistent with its ruling on the County's objection to the jury instruction, the trial court did not submit a special verdict form to the jury separating the award of severance damages from the award of business damages. Instead, the trial court submitted a general verdict form which simply awarded business damages.
Severance damages and business damages are interrelated but not identical concepts. See Blockbuster Video, Inc. v. State, Department of Transportation, 714 So.2d 1222, 1224 (Fla. 2d DCA 1998). In Rally's Hamburgers, Inc. v. State, Department of Transportation, 697 So.2d 535, 537 (Fla. 1st DCA 1997), the court explained that severance damages "are recoverable by a lessee in a partial condemnation proceeding and are measured by the loss in value to the portion of the leasehold not taken, including all fixtures attached to that portion of the property."
Although the verdict form did not specifically award the tenants severance damages, the County argues that the jury could have included severance damages in its business damages award because the above quoted instruction was confusing. To support the argument, the County points out that the tenants' expert witness testified that he included the value of fixtures in his business damages evaluation. We agree that the jury instruction was confusing. However, without the benefit of having a special verdict form, it is impossible for us to determine whether the jury awarded Hancock and Mr. Deis damages for fixtures under the category of business damages.
Since this matter must be remanded for retrial on the issue of damages, we note that on remand the tenants may be able to recover severance damages if they submit evidence that the County's taking of Cumberland's property caused diminution in value to the tenant's leasehold interest, including all fixtures attached to that portion of the property. If such evidence is submitted, the tenants shall also be entitled to receive an instruction on severance damages, and a provision for such an award shall be separately set forth on the verdict form. If the trier of fact concludes that the diminution in value of the leasehold property was the result of Cumberland's decision to terminate the leases, the tenants shall not be entitled to recover severance damages from the County.
*1171 On cross-appeal, Hancock and Mr. Deis argue that if this court reverses the business damage award, we must remand the case so that the trial court can award them damages to cover their moving expenses. We disagree.
In a partial taking case, a tenant is entitled to recover moving costs if the tenant is required to move its possessions off the property or to move them from one part of the property to another as a result of the taking:
A lessee whose leasehold is the subject of condemnation proceedings may only obtain compensation for the removal or relocation of personal property from the leasehold if only a portion of the leasehold is taken by the condemning authority, the personal property removed was located on the portion of the land condemned, and the personal property was relocated to the remainder of the leasehold and not removed to another location or sold.
Rally's Hamburgers, 697 So.2d at 537 n. 2. See Pensacola Scrap Processors, Inc. v. State Road Dep't, 188 So.2d 38, 41 (Fla. 1st DCA), cert. denied, 192 So.2d 494 (Fla. 1966); see also State Road Dep't v. Myers, 211 So.2d 33, 34 (Fla. 1st DCA 1968). Here, Hancock and Mr. Deis did not present any evidence indicating that they were required to move business property located on the portion of the property condemned. Accordingly, neither Hancock nor Mr. Deis is entitled to recover any moving costs.
In summary, we reverse the final judgment to the extent it awards business damages to Hancock and Mr. Deis, and remand this matter to the trial court for further proceedings consistent with this opinion. We affirm the final judgment in all other respects.[3]
CLARIFICATION GRANTED; AFFIRMED in part; REVERSED in part; and REMANDED.
W. SHARP and THOMPSON, JJ., concur.
NOTES
[1] See Fla. R.App.P. 9.200(f).
[2] Reliance upon this opinion as authority for a tenant's entitlement to business damages should be guarded. We recognize that after the trial court had denied the County's motion for summary judgment to limit business damages to the terms of the leases, the County moved for summary judgment arguing that Mr. Deis and Hancock were not entitled to any business damages. The trial court entered an order granting summary judgment in favor of the County stating that the tenants' "business damage[s] claim[s] were legally insufficient." However, that order was vacated before trial, and Seminole County did not argue on appeal that the tenants were not entitled to any business damages. The only issue before this court was whether the trial court erred in allowing tenants to recover business damages beyond the term of their leases.
[3] The County also argues the trial court erred in admitting the testimony of the tenants' expert witnesses because their fee was contingent upon the outcome of the trial. However, the County failed to offer the fee agreements into evidence and the trial court summarily denied the motion without ruling on whether the expert witnesses had agreed to be paid only if a verdict was entered in the tenants' favor. Based upon the status of the instant record, we cannot properly address the County's claim of error because we are unable to determine whether the experts had in fact agreed to be paid on a contingency basis. See McGurn v. Scott, 596 So.2d 1042, 1043 (Fla. 1992) (holding that an appellate court may not address an issue that has not been ruled upon by the trial court). In any event, it is not necessary for us to rule on this issue in light of our holding that the trial court improperly admitted expert testimony regarding the tenants' business damages.